IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT A. HAGUE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   22 C 5669 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| A.O. SMITH CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert A. Hague has brought a three-count complaint against defendant A.O. Smith Corporation.   In Count I plaintiff seeks a declaration that a noncompetition provision of a sale agreement is unenforceable or that plaintiff's anticipated role as an independent director of Aquaphor International OU ("Aquaphor") does not violate the provision.   Count II is a claim for breach of contract and Count III is a claim for tortious interference with prospective contractual or business relations.   Defendant answered, raised eight affirmative defenses, and counterclaimed for a declaration that the noncompetition provision is enforceable as written or as modified as proposed by defendant.   The parties have filed cross-motions for declaratory judgment.[1]   For the reasons described below, plaintiff's motion is denied, and defendant's motion is granted.

## BACKGROUND

Plaintiff is a 26-year veteran of the water treatment industry.   He and his brother were co-owners of William R. Hague, Inc. ("Hague Water"), an Ohio based company that sold expensive point of entry entire house water softeners for residential customers designed to

---

[1] Technically the motions are for summary judgment on the counts seeking declaratory judgment, and the parties have filed the appropriate pleadings required by L.R. 56.

remove calcium and soften water in the home. Defendant is a manufacturer of residential and commercial water heating equipment and boilers, as well as a manufacturer of water treatment products for residential and light commercial applications.

On September 5, 2017, defendant entered into a stock purchase agreement (the "Agreement") with the Hague brothers, under which defendant purchased the Hague Water business assets and goodwill for a total purchase price of $42,500,000. Plaintiff and his brother each received $20,750,000.

Plaintiff personally signed the Agreement, which is governed by Ohio law, and agreed to its terms. The Agreement contains, and plaintiff is subject to, a covenant on confidentiality with respect to Hague Water's "Confidential Information" and a restriction against the solicitation of Hague Water's employees, both of which were to last for two years from the date of the acquisition and have since expired. The Agreement also contains a noncompetition provision which provides:

> 5.5 Noncompetition. As an inducement to Purchaser to execute and deliver this Agreement and to consummate the transactions contemplated hereby, and to preserve the goodwill associated with the Business and the Company and its Subsidiaries, each of the Sellers agrees that, for a period of seven (7) years after the Closing Date, he will not, directly or indirectly, without the Purchaser's prior written consent: (a) engage in, continue in or carry on any business that competes in any aspect of the Business as presently conducted, including owning or controlling any financial interest in any person or entity that now or hereafter engages in or attempts to engage in any aspect of the Business as now conducted ("Competitor"); or (b) consult with, advise or solicit customers or otherwise serve as an intermediary for, whether or not for consideration, or offer any financial assistance to, any Competitor in any aspect of the Business as now conducted, including endorsing the products or services of any such Competitor; provided, however, that the foregoing shall not prohibit the ownership of not more than five percent (5%) of the securities of

>any publicly-traded entity. The geographic scope of this covenant not to compete shall extend throughout North America, China and each other jurisdiction where the Company or any of its Subsidiaries has sold or distributed any product in the year preceding the Closing Date. Purchaser may
>sell, assign or otherwise transfer this covenant not to compete, in whole or in part, to any person or entity that purchases all or any portion of the Company and its Subsidiaries. Recognizing the specialized nature of the Business, the Sellers acknowledge and agree that the restrictions of this covenant not to compete are reasonable.

Under the Agreement, defendant was to employ plaintiff as the president and chief executive officer of Hague Water until at least June 30, 2019. On September 11, 2018, however, defendant made plaintiff the Executive Chairman of the Board of Hague Water. Plaintiff claims his pay was cut and his duties reduced, and on June 17, 2019, his employment was terminated. He has not worked in the water treatment industry in any capacity since that his termination.

In early July 2022, plaintiff received a written request from Aquaphor to join its Board of Directors as an Independent Director. Plaintiff describes Aquaphor as a newly formed private company based in Estonia with about $50 million in annual sales, which is primarily a drinking water company focused on selling small inexpensive point of use handheld water filtration pitchers. According to plaintiff, Aquaphor's primary sales region is Eastern Europe, with the overwhelming portion (but not all) of its total sales there.

Defendant describes Aquaphor differently, as a company headquartered in Estonia "which manufactures various water treatment products, including water softeners, whole home patented "RO" (reverse osmosis) water purifiers, commercial, industrial and laboratory RO systems, and home water purifiers." It is undisputed that in 2013 Aquaphor and Hague Water

3

entered into a joint venture to design, develop, and support the commercialization and manufacturing of point of entry water softeners in their respective territories. The products developed by the joint venture contained many of the same parts and components as Hague Water's core water softener products. Hague water also sold its own products to Aquaphor for distribution in its territories. On October 17, 2018, Defendant sold its interest in the Hague Water/Aquaphor joint venture to Aquaphor but continued to provide the Hague Water line of softener products to Aquaphor for distribution. The sale included the designs and manufacturing equipment for building point of entry water softeners similar to Hague Water's core product line.

Plaintiff accepted Aquaphor's request to join its Board of Directors contingent on a satisfactory resolution with defendant of the noncompetition provision. He contacted defendant and requested permission to join the Board. Defendant rejected his request and after the parties failed to reach an agreement, plaintiff filed the instant action.

## DISCUSSION

"The general rule in Ohio is that covenants not to compete that are reasonable are enforced, and those that are unreasonable are 'enforced to the extent necessary to protect an employer's legitimate interest.'" AK Steel Corp. v. Morris, 2001 WL 32804 at *1 (Ohio Ct. App. 2001) (quoting Raimonde v. Van Vlerah, 42 Ohio St. 2d 21, 25-26, 325 N.E.2d 544 (1975). "A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if it is no greater than is required for the protection of the employer, does not impose a hardship on the employee, and is not injurious to the public," and "courts are empowered to modify or amend employment agreements to achieve such

4

results." Raimonde, 42 Ohio St. 2d at 26. Because such covenants restrict the exercise of gainful occupation, Ohio, like many states, considers them a restraint on trade, and looks upon them with disfavor. See Century Business Servs., Inc. v. Urban, 179 Ohio App.3d 111, 118 (8th Dist. 2008). When, however, the restrictive covenant is entered ancillary to the sale of a business, as in the instant case, it is afforded less scrutiny than ones entered by employees as consideration for employment. Id. Such covenants are considered "particularly conscionable" because "a seller is usually paid an increased price for agreeing to a period of abstention. The abstention is part of the thing sold and is often absolutely necessary in order to secure to the buyer the things he has bought." Id. at 119. "Indeed, the sale of a business's goodwill is the most entrenched of the exceptions to the general public policy against restraint of trade." Id. at 118-19 (internal quotation omitted).

The Ohio Supreme Court in Raimonde set forth a test of reasonableness for courts to consider when determining whether a restrictive covenant not to compete should be enforced. 42 Ohio St.2d at 25. Among the factors to be considered are, id.,:

> [t]he absence or presence of limitations as to time and space[;] . . . whether the employee represents the sole contact with the customer[; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment.

5

Plaintiff argues that the covenant in question is greater than required and overbroad as to its duration, geographic scope and activity restrained. The court disagrees. First, as to the 7 year duration, plaintiff argues there is no legitimate reason for a 7 year noncompetition restriction, when the underlying restrictions on confidentiality and nonsolicitation have already expired. But, the noncompetition provision protects different interests than the other provisions. Confidential information and customer lists can become stale after two years, while plaintiff's expertise and experience does not. Moreover, in cases where the restrictive covenant was ancillary to the sale of a business, the Ohio courts have upheld restrictions on competition as long as 10 and15 years. Century Business, 179 Ohio App.3d at 119 (citing DiAngelo v. Pucci, 1987 WL 8856 (Ohio App Ct. 11th Dist. 1987), and 17 Ohio Jurisprudence 3d (1980) 561, Contracts, Section 119.

In the instant case, the restriction runs for 7 years from the date of closing, which was September 5, 2017. It terminates on September 5, 2024. But plaintiff ended his employment with defendant in June 2019, so the actual restrictive period is less than 5 ½ years. There is nothing inherently unreasonable about that duration.

Next, plaintiff challenges the geographic scope of the restriction as vague, unspecified, overly broad and an unreasonable restraint of trade to the extent that it is effectively a world wide restriction that prohibits plaintiff from working in any capacity in the water treatment industry in North America, China, and any other location where Hague Water sold any product in the year preceding the sale. Plaintiff argues that the restriction seeks to prohibit him from working anywhere in the world without regard to whether he personally worked in, provided services in or was involved in sales in such countries on behalf of Hague Water. The cases he

6

relies on to demonstrate that such covenants are overbroad all involved restrictions contained in employment agreements. See Cintas Corp. v. Perry, 517 F.3d 459 (7th Cir. 2008); CNG Financial Corp. v. Brichler, 2021 WL 4189577 (S.D. Ohio Sept. 14, 2021).

In contrast, in the instant case the noncompetition provision was part of sale of Hague Water to defendant. The Agreement was bargained for at arm's length, with both sides represented by counsel. Plaintiff received over $20 million, in part for agreeing to the restrictive covenants in the Agreement. There is nothing vague or unreasonably overbroad in restricting plaintiff from working for any competing company in any location where Hague Water was selling product the year before the sale.

Plaintiff also argues that the provision is overbroad because it contains no activity restrain and prohibits him from "operating in any capacity for another company . . . even as a janitor." This is pure sophistry, as the provision prohibits plaintiff only from engaging in business with, consulting for, soliciting customers for, or offering financial assistance to a competitor, which is defined to include only entities engaged in the same business as Hague Water. He can work as a janitor anywhere he wishes.

Finally, plaintiff argues that even if the provision is enforceable, it does not cover or prevent plaintiff from acting as an Independent Director of Aquaphor because Hague Water and Aquaphor are not competitors. He argues that the two companies do not sell to the same customers or markets, sell different products, and operate in different geographic locations. But it is undisputed that defendant sold its interest to Aquaphor in the Joint Venture water softener, which Aquaphor now produces. Thus, defendant and Aquaphor are competitors in at least one market. Consequently, the court concludes that the noncompetition provision prevents plaintiff

from accepting the position as an Independent Director of Aquaphor until the provision terminates.

Defendant's motion [36] is granted and plaintiff's motion [18] is denied.

## **CONCLUSION**

For the reasons described above, the court grants defendant's motion [36] for a declaratory judgment and denies plaintiff's motion [18] for a declaratory judgment. Defendant is directed to submit a proposed judgment order by May 23, 2023. The parties are directed to file a joint status report on this court's form by May 30, 2023.

**ENTER:**

**Robert W. Gettleman
United States District Judge**

**DATE:  May 16, 2023**